915 P.2d 6

Patricia E. HENDERSON, Petitioner–
Respondent,

v.

Vernon K. SMITH, Defendant–Appellant.

STATE of Idaho, DEPARTMENT OF
HEALTH AND WELFARE, ex rel. Pa-
tricia E. HENDERSON, Petitioner in
Intervention–Respondent,

v.

Vernon K. SMITH, Respondent
in Intervention–Appellant.

No. 21569.

Supreme Court of Idaho,
Boise, January 1996 Term.

April 4, 1996.

Steven A. Adamson, Boise, for appellant.

Bauer & French, Boise, for respondent Henderson. Charles B. Bauer argued.

McDEVITT, Chief Justice.

In this paternity action, appellant, Vernon K. Smith, appeals from the district court's decision affirming the magistrate's determination that Smith is the biological father of Rachel R. Henderson and order requiring Smith to pay for the future and past support of the child. We affirm the decision of the magistrate in all respects, except for the magistrate's award of attorney fees, which we reverse.

## I.

### BACKGROUND AND FACTS

The relevant facts are as follows. On June 7, 1981, respondent, Patricia E. Henderson (Henderson) gave birth to Rachel R. Henderson (Rachel). On March 27, 1992, Henderson filed a paternity action against appellant, Vernon K. Smith (Smith), seeking a judgment declaring Smith the biological father of Rachel and ordering payment of past and future child support payments. Pursuant to Henderson's motion, the magistrate ordered the parties to submit to blood tests for the purpose of determining paternity.

Henderson contacted the State of Idaho, Department of Health & Welfare (the State)

and requested assistance in obtaining the blood tests. The State subsequently filed a motion to intervene, pursuant to sections 56–203B and 56–203C of the Idaho Code and Rule 24(a) of the Idaho Rules of Civil Procedure. Over Smith's objections, the magistrate granted the State's motion to intervene and ordered that the blood drawing take place on March 10, 1993. The magistrate ordered that the blood testing be performed by Genetic Design, Inc., in Greensboro, North Carolina. The magistrate's order also gave Smith the option of requesting DNA testing in addition to the blood testing.

The blood samples were taken on March 10, 1993. The samples were sent to Genetic Design, Inc., and the paternity evaluation was performed. The Paternity Evaluation Report concluded that the probability of Smith's paternity was 99.96%.

A trial before the magistrate was held on August 17, 1993. The magistrate rendered its decision concluding that Smith was the biological father of Rachel. The magistrate based its conclusion on Smith's admission of sexual relations with Henderson during the approximate time of conception, the fact that the baby was full term, the lack of evidence of Smith's sterility, and the results of the blood tests, which showed a probability of paternity of 99.96%. The magistrate held that Smith, as the biological father of Rachel, was responsible for paying past support expended by Henderson, limited to the six year period prior to the filing of the complaint. The magistrate further concluded that, based on the Idaho Child Support Guidelines, Smith was responsible for payment of child support in the amount of $373.00 per month beginning April 1993 and continuing until Rachel reaches majority or, if she continues her education, until she reaches the age of 19. Smith was required by the magistrate to pay the State $240.00 for the cost of the blood tests, to carry health insurance on Rachel until she reaches majority, and to split health care costs not covered by insurance with Henderson. The paternity action was held to not be barred by laches or the statute of limitations. Smith appealed the magistrate's decision.

On appeal, the district court affirmed the decision of the magistrate. Smith appealed to this Court.

## II.

### ISSUES ON APPEAL

On appeal, Smith argues (1) that Henderson's paternity action is barred by the statute of limitations, (2) that the magistrate erred in concluding that the defense of laches did not apply, (3) that the magistrate erred in allowing the State to intervene in this action, (4) that the magistrate's findings of fact are contrary to the weight and preponderance of the evidence presented, (5) that the magistrate erred in allowing the admission of the blood test results, (6) that Smith was denied due process of law by Henderson's failure to give notice of the claim within a meaningful time and manner, (7) that the magistrate erred in failing to consider the best interests of the child, (8) that the magistrate erred in entering judgment for a past debt for support for the prior six years, and (9) that attorney fees were improperly awarded to Henderson. The State seeks attorney fees on appeal pursuant to section 12–121 of the Idaho Code.

## III.

### STANDARD OF REVIEW

This Court reviews a decision of the magistrate division of the district court, independently of, but with due regard for, the decision of the district court sitting in its appellate capacity. *Balderson v. Balderson*, 127 Idaho 48, 51, 896 P.2d 956, 959 (1995); *State Dep't of Health & Welfare v. Annen*, 126 Idaho 691, 692, 889 P.2d 720, 721 (1995). The findings of the magistrate will be upheld by this Court, if they are supported by substantial, competent evidence in the record. *Balderson*, 127 Idaho at 51, 896 P.2d at 959. Issues of law are freely reviewed by this Court. *Id.*

## IV.

### THE PRESENT ACTION IS NOT BARRED BY THE STATUTE OF LIMITATIONS.

Smith contends that the present paternity action is barred by the statute of limitations.

Smith argues that, under section 7–1107 of the Idaho Code, and the tolling effects of the minority statute at section 5–230 of the Idaho Code, a paternity action must have been brought within nine years of Rachel's birth. Since Rachel was born on June 7, 1981, and the present action was not commenced until March 27, 1992, Smith argues that the action is barred by the expiration of the statute of limitations.

Under the 1969 Paternity Act, a claim for establishing the paternity of a child had to be brought within three years of the birth of the child. I.C. § 7–1107; I.C. § 5–218. When combined with the minority tolling provision of I.C. § 5–230, which tolled the limitations period for minors for up to six years, a paternity action could be brought under the 1969 Paternity Act within nine years of the child's birth. I.C. §§ 5–230, 7–1107. In 1985, the Idaho Legislature amended I.C. § 7–1107, expanding the limitations period to allow for the filing of a paternity action any time prior to the child's reaching the age of majority. 1985 Idaho Sess.Laws, H.B. No. 100, ch. 159, § 4, p. 422. In 1986, the Idaho Legislature again amended I.C. § 7–1107 to provide for the retroactive application of the limitations period "for the benefit of any dependent child, whether born before or after the effective date of this act [July 1, 1986]." 1986 Idaho Sess.Laws, H.B. 645, ch. 221, § 1, p. 584.

■ Smith argues that the statutory amendments to I.C. § 7–1107 do not permit Henderson to pursue this paternity claim on the ground that the legislature cannot revive a cause of action after the limitations period has lapsed and expired under the pre-amended limitations provisions. We disagree. Under I.C. § 7–1110, proceedings to establish the paternity of a child and to compel support under the Paternity Act may be commenced on the behalf of the child by the mother, guardian, or other person standing in a paternal relation to the child. Henderson brought this paternity action, as permitted in I.C. § 7–1110, in order to establish paternity and obtain support for the child. Henderson's actions were on the behalf of and for the benefit of Rachel.[1] Having brought the action on behalf of the child, the paternity action continued to be a viable claim at the time of the 1985 and 1986 amendments to I.C. § 7–1107.

■ The application of the 1986 amendments to the present action does not violate I.C. § 73–101's prohibition of the retroactive application of statutes. Section 73–101 of the Idaho Code prohibits the retroactive application of statutes unless the legislature expressly declares its intent that the statute be so applied. *State v. O'Neill,* 118 Idaho 244, 247, 796 P.2d 121, 124 (1990); *Gailey v. Jerome County,* 113 Idaho 430, 432, 745 P.2d 1051, 1053 (1987). Here, the legislature has acted and has clearly expressed its intent that the statute of limitations is not to run on a cause of action for any child, regardless of whether the child was born before or after the effective date of the 1986 amendment. I.C. § 7–1107 (effective 1986). We conclude that the present action is not barred by the statute of limitations.

## V.

### THE PRESENT ACTION IS NOT BARRED BY THE DOCTRINE OF LACHES.

Smith argues that the magistrate erred in concluding that the defense of laches does not apply to a paternity action. Smith contends that the magistrate's ruling precluded Smith from presenting facts to support his argument that the doctrine of laches applies to paternity proceedings. Contrary to Smith's argument, the magistrate did not rule that laches is not applicable to paternity cases. Rather, the magistrate held that this particular action was not barred by the doctrine of laches.

1. The State sought and was granted the right to intervene in this paternity action at the request of Henderson. The State's motion to intervene was captioned *"ex rel.* Rachel R. Henderson." The magistrate granted the State's motion, and the Order was also entitled *"ex rel.* Rachel R. Henderson." For reasons unexplained in the record, the caption of this case changed to *"ex rel.* Patricia E. Henderson." Regardless of whether the case caption reads *ex rel.* the mother or *ex rel.* the child, the action was brought on the behalf of and for the benefit of Rachel.

The necessary elements to maintain a defense of laches are:

> (1) defendant's invasion of plaintiff's rights; (2) delay in asserting plaintiff's rights, the plaintiff having had notice and an opportunity to institute a suit; (3) lack of knowledge by the defendant that plaintiff would assert his rights; and (4) injury or prejudice to the defendant in the event relief is accorded to plaintiff or the suit is not held to be barred.

*State Dep't of Health & Welfare v. Annen,* 126 Idaho 691, 692–93, 889 P.2d 720, 721–22 (1995) (quoting *Finucane v. Village of Hayden,* 86 Idaho 199, 205, 384 P.2d 236, 240 (1963)) Since the doctrine of laches is a claim founded in equity, in determining whether the doctrine applies, consideration must be given to all surrounding circumstances and acts of the parties. *Annen,* 126 Idaho at 692, 889 P.2d at 721. The lapse of time alone is not controlling on whether the doctrine applies. *Id.*

Even assuming all of the other elements are met, Smith cannot meet the third element requiring a lack of knowledge by Smith that Henderson would assert her rights. Smith had knowledge of the child and could anticipate that Henderson would assert any rights against Smith. Smith could not have been surprised or prejudiced by any delay in the assertion of the paternity action. We conclude that the paternity action is not barred by the doctrine of laches.

## VI.

## THE MAGISTRATE DID NOT ERR IN PERMITTING THE STATE TO INTERVENE IN THIS ACTION.

Smith challenges the magistrate's decision permitting the State to intervene in the present action. I.R.C.P. 24(a) provides that an applicant may intervene as a matter of right where an unconditional right to intervene is provided by statute or where the applicant claims an interest relating to the transaction or which is the subject of the action, and the applicant's ability to protect that interest will be impaired or impeded unless the applicant's right is adequately represented in the action.

The Department sought to intervene as a matter of right pursuant to sections 56–203B and 56–203C of the Idaho Code on the grounds that Henderson was receiving public assistance for her daughter Rachel and that the Department is subrogated to any child support which may be ordered. Under I.C. § 56–203C(6), the State is authorized to appear on behalf of a minor child to obtain support necessary to provide for the child's needs or to enforce any support order, regardless of whether the child receives public assistance. The State is also required to take "appropriate action" upon the receipt of an application for public assistance on behalf of a child, where a person neglects his or her responsibility to provide proper care or support to the child. I.C. § 56–203A. Idaho Code § 7–1110 also permits the State to bring a paternity action on behalf of a child for whom aid has been given. These provisions constitute a proper statutory basis for the State to intervene as a matter of right in this action. *E.g., Department of Health & Welfare ex rel. Gage v. Engelbert,* 114 Idaho 89, 91, 753 P.2d 825, 827 (1988). The magistrate did not err in granting the State's motion to intervene in this action.

## VII.

## THE FINDINGS OF THE MAGISTRATE ARE SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE.

Smith argues that the magistrate's findings of fact are contrary to the weight and preponderance of the evidence presented. We disagree and conclude that substantial, competent evidence supports the findings of the magistrate. The evidence in the record supports the magistrate's findings that Smith admitted to having sexual relations with Henderson at the approximate time of conception, that Henderson carried the child full term, that there was a lack of evidence of Smith's sterility, and that the Paternity Evaluation Report showed a 99.96% probability of paternity. Accordingly, we will not overturn the magistrate's findings on appeal. *Balderson,* 127 Idaho at 51, 896 P.2d at 959.

## VIII.

**THE MAGISTRATE DID NOT ERR IN ADMITTING INTO EVIDENCE THE PATERNITY EVALUATION REPORT, THE TESTIMONY OF DR. FOSTER, OR THE EVIDENCE RELIED UPON TO CALCULATE SMITH'S CHILD SUPPORT OBLIGATION.**

Smith contends that the magistrate erred in admitting the Paternity Evaluation Report and the testimony of Dr. Robert Scott Foster. Smith argues that, although Dr. Foster was qualified as an expert witness, he was not qualified to testify as a custodian or supervisor of the Paternity Evaluation Report, and thus, the Paternity Evaluation Report should not have been admitted under the business exception to the hearsay rule.

 A blood test report that is ordered to establish the paternity of a child is hearsay. *State Dep't of Health & Welfare ex rel. Osborn v. Altman,* 122 Idaho 1004, 1007, 842 P.2d 683, 686 (1992); *Isaacson v. Obendorf,* 99 Idaho 304, 309, 581 P.2d 350, 355 (1978). However, the trial court has within its broad discretion the decision of whether to admit hearsay under one of the exceptions to the hearsay rule. *Altman,* 122 Idaho at 1007, 842 P.2d at 686. This Court will not overturn the trial court's exercise of its discretion to admit business records evidence absent a clear showing of abuse. *Id.*

 The magistrate admitted the Paternity Evaluation Report under the business records exception to the hearsay rule, over the objections of Smith. Under the business records exception to the hearsay rule, a report or data compilation is not excluded by the hearsay rule, if it is made and kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the report, record, or data compilation. I.R.E. 803(6); *Large v. Cafferty Realty, Inc.,* 123 Idaho 676, 683, 851 P.2d 972, 979 (1993); *Altman,* 122 Idaho at 1007, 842 P.2d at 686. The records or reports sought to be admitted into evidence under the business records exception to the hearsay rule need not be authenticated by the person who made the records, but it is necessary that the records be authenticated by a person who has custody of the record as a regular part of his or her work or who has supervision of its creation. *Altman,* 122 Idaho at 1007–08, 842 P.2d at 686–87. The custodian of the records may testify and explain the record keeping processes of the organization and need not have personal knowledge of the actual creation of the document when the record was made. *Id.* The requirement is that the person testifying have the knowledge of the record keeping system. *Id.*

 Dr. Foster was accepted by the magistrate as an expert witness, without any objections by Smith. The record reveals that Dr. Foster was the custodian of the business records at Genetic Design, Inc. and thus was able to testify to the record keeping process at Genetic Design, Inc. Proper foundation was established to admit Dr. Foster's testimony on the testing methods and procedures used at the laboratory and his testimony as an expert in blood testing. Smith has not made a showing that the magistrate abused its discretion by admitting the testimony of Dr. Foster under the applicable rules of evidence. *Altman,* 122 Idaho at 1007, 842 P.2d at 686.

 Smith additionally challenges the admissibility of the blood test results in the Paternity Evaluation Report on the grounds that the tests were unreliable, that the tests were not performed within proper standards, and that DNA tests were not performed. Smith's arguments are without merit. The blood tests were performed in accordance with the standards of the industry and concluded that there was a 99.96% probability of paternity. Smith, pursuant to a court order, was given the option of requesting the DNA tests. Smith chose not to have the DNA tests performed. Smith has failed to present evidence to establish that the magistrate abused its discretion in admitting the Paternity Evaluation Report. Absent evidence of abuse of discretion, we conclude that the Paternity Evaluation Report was properly admitted.

Smith next argues that the magistrate erred in allowing Henderson to use evidence

of the average income of attorneys to calculate Smith's child support obligation. Smith contends that the use of the average income of Idaho attorneys was in error because there was no evidence to show that Smith was within the class of wage earners used to formulate the data.

■ The magistrate's award of child support is reviewed by this Court under an abuse of discretion standard. *Noble v. Fisher,* 126 Idaho 885, 888, 894 P.2d 118, 121 (1995). Smith bears the burden of establishing that the magistrate's calculations constituted a manifest abuse of discretion.

■ Under the Idaho Child Support Guidelines (I.C.S.G.), gross income for purposes of determining income available to a parent to satisfy his or her child support obligation is defined as including income from any source. I.C.S.G. § 6(a); *Noble,* 126 Idaho at 889, 894 P.2d at 122. While the definition of gross income is not exhaustive, it has been interpreted by this Court to be an expansive list subject to a broad scope of inclusive sources of income. *Noble,* 126 Idaho at 889, 894 P.2d at 122. The determination of income and expenses from an individual who is self employed should be carefully reviewed to determine the level of gross income to satisfy a child support obligation. I.C.S.G. § 6(a)(2). This gross income for the self employed parent, may differ from a determination of business income for tax purposes. *Id.* One of the considerations in determining the amounts of child support is the financial ability of the payor to make the payments. *Shumway v. Shumway,* 106 Idaho 415, 419, 679 P.2d 1133, 1137 (1984). However, if a parent is voluntarily underemployed, then child support is to be based upon potential income. I.C.S.G. § 6(c)(1). The potential income of a voluntarily underemployed parent may be based upon employment potential and probable earning levels based on work history, occupational qualifications, and prevailing job opportunities and earning levels in the community. I.C.S.G. § 6(c)(1)(A).

■ The magistrate, in determining the amount of Smith's income, found that Smith's monthly disposable or gross income is $3,500.00, based on Smith's ability to earn an average income as a practicing attorney with over twenty years of experience. The magistrate took into consideration costs for reasonable overhead and operating expenses and Smith's previous child support obligation and determined that Smith's monthly child support obligation would be $373.00. Smith has failed to meet his burden of establishing that the magistrate's determination constituted a manifest abuse of discretion. *See Shumway,* 106 Idaho at 419, 679 P.2d at 1137. Smith is a practicing lawyer, who apparently has no monthly disposable income. Smith has practiced law for more than twenty years. Since the magistrate did not have a monthly income figure for Smith, or any evidence indicating that Smith was not underemployed, the magistrate estimated Smith's potential income and probable earnings based on the average earning levels of Idaho attorneys. The magistrate did not abuse its discretion in reaching this conclusion, and the evidence was properly admitted.

## IX.

## SMITH'S ISSUES RAISED FOR THE FIRST TIME ON APPEAL WILL NOT BE CONSIDERED BY THIS COURT.

■ Smith argues that he was denied due process of law by Henderson's failure to give notice of the claim within a meaningful time and manner. The record fails to disclose any indication that this issue was raised below. The district court resolved this issue on appeal, but the issue was not raised in Smith's answer, nor was it argued before or addressed by the magistrate. Smith asserted this issue for the first time on appeal to the district court. This Court will not consider issues that are raised for the first time on appeal. *Viveros v. State Dep't of Health & Welfare,* 126 Idaho 714, 716, 889 P.2d 1104, 1106 (1995).

Smith also argues that Henderson and the State failed to consider the interests of the child in instituting these proceedings and challenges the magistrate's award of past support for the six years prior to the filing of

this action. These issues were not raised before the trial court and are presented for the first time on appeal. As stated above, this Court will not consider issues that are raised for the first time on appeal. *Id.*

## X.

### THE MAGISTRATE ERRED IN AWARDING ATTORNEY FEES TO HENDERSON.

Smith argues that the magistrate erred in entering any judgment against Smith. Smith argues that he should have prevailed in this action and therefore is entitled to attorney fees. We have concluded that the magistrate did not err in concluding that Smith was the biological father of Rachel Henderson or that Smith was obligated to pay past and future support. Accordingly, Smith is not the prevailing party and is not entitled to attorney fees.

The magistrate awarded attorney fees to Henderson and the State as the prevailing party pursuant to I.R.C.P. 54, but it did not state the basis for its award. Henderson and the State sought attorney fees under I.C. § 12–120(1) or under I.C. § 12–121. An award of attorney fees is not proper under either provision.

 Under I.C. § 12–120(1), reasonable attorney fees are awarded to the prevailing party if the amount pleaded is less than $25,000.00. Henderson did not plead any specific amount of damages, which precludes an award of fees under this provision. *Cox v. Mueller*, 125 Idaho 734, 736, 874 P.2d 545, 547 (1994) (prevailing party cannot claim an entitlement to attorney fees under I.C. § 12–120(1) unless damages of $25,000.00 or less have actually been plead).

Under I.C. § 12–121 and I.R.C.P. 54(e), attorney fees will generally only be awarded when the court is left with the belief that the appeal was brought, pursued, or defended frivolously, unreasonably, or without foundation. I.C. § 12–121; I.R.C.P. 54(e)(1); *Balderson*, 127 Idaho at 54, 896 P.2d at 962. The magistrate made no findings or conclusions that Smith's defense of this action was frivolous or unreasonable as

required under the Idaho Rules of Civil Procedure. I.R.C.P. 54(e)(1), (e)(2). Without findings by the magistrate, this Court has no basis upon which to provide a meaningful review of the magistrate's award of attorney fees.

Based upon the record presented, there is no basis for the magistrate's award of attorney fees to Henderson.

## XI.

### CONCLUSION

The decision of the magistrate is affirmed, except for the magistrate's award of attorney fees, which is reversed. No attorney fees are awarded on appeal. Costs are awarded to respondent State of Idaho, Department of Health and Welfare.

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.